**NATURE'S BOUNTY, INC., Plaintiff,**

v.

**BASIC ORGANICS, Defendant.**

**No. 75 C 1763.**

United States District Court,
E. D. New York.

May 23, 1977.

NEAHER, District Judge.

In this action under the Trade-Mark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1051–1127, plaintiff seeks an injunction against alleged infringement of its registered trademark "B–100" and unfair competition, and an accounting for damages and profits. Jurisdiction is founded on 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). Plaintiff's application for a preliminary injunction, based on affidavits, was denied in a Memorandum and Order dated January 14, 1976. The case was thereafter tried to the court without a jury and the following constitute the court's findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.

## I.

The parties are competing manufacturers of health food products and vitamins.[1] Plaintiff is the registered owner of the trademark "B–100", Reg.No.979,312, granted February 26, 1974. PX 9. "B–100" is used to designate plaintiff's vitamin product which consists of a complex of vitamin B factors—$B_1$, $B_2$, $B_6$, $B_{12}$, niacinamide, folic acid, pantothenic acid, d-Biotin and also para-Aminobenzoic acid.[2] The average potency of each B factor is 100 milligrams or micrograms. Plaintiff claims March 8, 1973 as the date of first use of the designation "B–100" and first introduced the product on the market in early or mid-1973.

Defendant manufactures an identically formulated B complex vitamin, also with average potency of 100 milligrams or micrograms in each factor. The vitamin is sold under the allegedly infringing name "Century–B–100." The designation "Century–B–100" has never been registered as a trademark. Defendant first introduced its product about July 1974.

It has been defendant's contention since the institution of this lawsuit that, in the context of the vitamin industry, the term "B–100" is merely descriptive of a vitamin

Michael C. Duban, New York City, for plaintiff.

Bauer, Amer & King, P.C. by Myron Amer, Mineola, N.Y., for defendant.

---

1. Nature's Bounty is a New York corporation; Basic Organics is incorporated as Leeds-Dixon Laboratories, Inc. in New Jersey.

2. The formula is not patented.

product consisting of 100 milligrams (or micrograms) of the various B factors and that the public associates "B–100" with the vitamin product and not with its manufacturing source or origin. Against this background we turn to a discussion of the facts.

## II.

Vitamin B is a complex vitamin, that is, it includes a number of factors, for example, 1, 2 and folic acid,[3] in contrast to vitamins C and E, which are single entities. Vitamin B products are sold which contain only one factor, e. g., 12, but more commonly consist of a combination of factors, that is, a vitamin B complex. Potency of vitamins is commonly measured in milligrams or micrograms, in units of 50, 60, 100 and so forth.

Testimony was adduced at trial that an accepted trade practice in the vitamin industry for designating vitamins C and E is to list the letter of the vitamin followed by its potency in milligrams (or by the number of tablets). For example, C–100 indicates 100 milligrams (or tablets) of vitamin C. It is defendant's contention, disputed by plaintiff, that a similar trade practice exists with respect to vitamin B.

Defendant previously submitted, in connection with the preliminary injunction application, an affidavit that B complex vitamins were marketed prior to 1970 with the potency of each B factor related to the average adult's minimum daily requirement for that factor and that, at least by sometime in 1970, Wm. T. Thompson Co. introduced a B vitamin product which contained the various B factors at a selected standardized potency. The Thompson product, "B–Complex–'50'", designated 50 milligrams (or micrograms) of the B factors present and became a commercial success.[4] Both plaintiff's and defendant's products consist of such a balanced formula, in units of 100 milligrams (or micrograms).

Plaintiff manufactures an entire line of vitamin products. In addition to its trademark "B–100", it owns the registered trademark "B–50." The product sold under the name "B–50", like "B–100", is a B complex vitamin with the numerical suffix indicating the number of milligrams (or micrograms) of each B factor, that is, 50 milligrams. Defendant sells a vitamin with the same formulation as "B–50" which it labels as "Supreme–50." PX 10. Plaintiff does not object to defendant's use of the name "Supreme–50."

As part of its line, plaintiff also manufactures vitamin C products. Two products, named C–100 and C–300, consist of 100 and 300 milligrams of vitamin C respectively. Likewise, it produces vitamin E tablets under the names E–200 and E–400, which contain 200 and 400 units of vitamin E. Stanley Krasnoff, plaintiff's vice president, testified that the designations C–100, C–300, E–200 and E–400 were selected in accordance with the accepted trade practice of designations for vitamins C and E discussed *ante*. Tr. 54.[5] In his opinion, no such trade practice exists with respect to vitamin B. It was his belief that the average consumer drew distinctions between vitamins C and E and vitamin B, but he acknowledged that a customer who selects a vitamin designated by the letter "B" followed by the numeral "100" knows he or she is buying 100 milligrams of a B complex vitamin. Tr. 71. Finally, he testified that when plaintiff introduced "B–100", it meant only the name of the product, but that now, because there are several products on the market with that name, the health food public assumes there are one hundred milligrams of each B factor.

---

3. Vitamin B complex consists of a group of water-soluble substances, including: Thiamine ($B_1$), Riboflavin ($B_2$), Nicotinamide ($B_3$), Adenine ($B_4$), Pantothenic Acid ($B_5$), Pyridoxine Hydrochloride etc. ($B_6$ group), $B_{10}$, $B_{11}$, $B_{12}$, $B_{13}$, $B_{15}$, folic acid ($B_c$), para-aminobenzoic acid (possibly), inositol, and choline (possibly). Dorland's Medical Dictionary (25th ed. 1974).

4. Affidavit of E. R. Dichter ¶ 5, filed January 5, 1976.

5. "Tr." refers to trial transcript.

Many companies manufacture a B vitamin designated as B complex. See DX 1. Mr. Krasnoff testified that any name which did not group the elements "B" and "100" together would not be objectionable to plaintiff. As an example, "B Complex 100" would be unoffensive. This testimony is accepted, not as a legal conclusion of what constitutes infringement, but as plaintiff's expression of the distinguishing features of its trademark.

Plaintiff sells "B–100" to retailers, wholesalers and through the mails. Advertisements for "B–100" have appeared in trade publications available to pharmacists, such as *Drug Topics Red Book*, PX 6, and to health food stores, such as *Health Foods Retailing*, PX 1. The advertising budget for "B–100" has grown since introduction from $10,000–$15,000 in 1973 to between $70,000–$90,000 in 1976.

In addition to direct sales, plaintiff sells "B–100" through a division, Puritan's Pride, a mail order house servicing over 350,000 listed customers. Although Puritan's Pride mail order catalogues listing "B–100" identify the name as a trademark of Nature's Bounty, PX 3, 4, the labels on the bottles do not. Nor do the labels on the bottles give notice that Puritan's Pride is a division of plaintiff. DX 10.

Plaintiff at one time also sold "B–100" under the label Doctor's Pride in specialty vitamin stores. Nothing on that label would have identified the name B–100 as a trademark of Nature's Bounty. DX 11.[6]

Plaintiff has given one other corporation, Solgar Co. Inc., permission to use "B–100", because the two corporations have a common director on their boards. The public cannot tell from Solgar's labels that "B–100" is plaintiff's trademark.

At trial, a proprietor of a health food store, Renee Browne, testified on behalf of plaintiff as a resale purchaser of its "B–100". She stated that for a period of time after April 1973, her customers who asked for "B–100" were shown only plaintiff's product, but that "last year" she directed customers to more than one product. She also testified, however, that customers were not confused as to who made or marketed the particular vitamins bought and that they selected the brand of "B–100" purchased based on labels, price or other reason.

Defendant called no witnesses but did introduce labels from 14 different vitamin concerns to substantiate its claim that "B–100" was merely descriptive and indicative of the product, not the source of the product. The following list of companies and their product names serves to demonstrate defendant's point:

| Company | Product | Exhibit |
|---|---|---|
| Barth Naturals | Action B–50 | (DX 2) |
| Olympian Natural Products | Balanced B 50 | (DX 3) |
| Richlife, Inc. | Balanced B 50 complex with C (DX 5) | |
| Nature Most Products | Balanced B–60 | (DX 6) |
| Synergy Plus | B–Complex "50" | (DX 7) |
| Genovese | HI–B 50's | (DX 8) |
| RVP | B Complex 50 | (DX 9) |
| | B Complex 100 | |
| Consumer Vitamin Values | Super B–Complex 50 | (DX 12) |
| Wm. T. Thompson Co. | B–Complex–"50" | (DX 14) |
| PLUS | B Complex 100 | (DX 15) |
| | B Complex 75 | |
| | B Complex 50 | |

At least one other company, Natural Food Centres, Inc., designates its vitamin C product as "C–300". DX 13.

Mr. Krasnoff testified that plaintiff had instituted actions against the first three named manufacturers charging infringement and that one suit had been settled. Plaintiff submitted settlement letters containing agreements with two other companies to discontinue sales: by Richards Laboratories, Inc. of the product "ALL–B–50", to be replaced by "ALL–B", and by General Nutrition Corp. of "B One Hundred" to be replaced by "Big One Hundred."

With this review of the facts we turn to the merits of the parties' claims.

### III.

#### Infringement

█ The gravamen of this action is the extent of the protection afforded plaintiff's registered trademark. The guiding principle in this Circuit is as follows:

---

6. The Doctor's Pride label has not been extensively sold. Tr. 70.

"The purpose of the trademark laws is to protect the public from the confusion and deception which flows from the copying of marks which, through their distinctiveness or exclusivity of use, identify the origin of the marked products." *W. E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868, 871 (2 Cir. 1966).

Accord, *Feathercombs, Inc. v. Solo Products Corp.*, 306 F.2d 251, 255 (2 Cir. 1962).

■ In an ascending array of protection, marks are classified as (1) generic, that is, the common descriptive name, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. See *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2 Cir. 1976). A mark which is suggestive is entitled to protection against infringement whereas a mark which is "merely descriptive" of the product is denied that protection unless it has become distinctive, through the development of secondary meaning. § 2 of the Lanham Act, 15 U.S.C. § 1052.

■ Ownership of the registered trademark is prima facie evidence of the registrant's exclusive right to use the mark. § 33 of the Lanham Act, 15 U.S.C. § 1115(a). In this case, plaintiff was permitted to register the mark "B–100" without any proof of secondary meaning. This decision of the Patent Office entitles plaintiff to the rebuttable presumption that the mark is suggestive rather than merely descriptive. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, supra, 537 F.2d at 11; *Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp.*, 259 F.2d 314, 316 (2 Cir. 1958).

■ What determines the ultimate conclusion categorizing a mark as "suggestive" or "merely descriptive" is a question not subject to easy analysis. In general terms, however, a mark is descriptive if it "naturally and normally direct[s] attention to the qualities, ingredients, appearance, effect, purpose or other features of goods . . . ." 3 Callman, Unfair Competition,

Trade-Marks and Monopolies § 71.1 (3d ed. 1969) [hereinafter cited as "Callman"]. On the other hand a suggestive mark is one which is not primarily descriptive, nor purely arbitrary. *Franklin Knitting Mills, Inc. v. Fashionit Sweater Mills, Inc.*, 297 F. 247, 248 (2 Cir. 1923); 3 Callman § 71.2.

In *Abercrombie & Fitch Co. v. Hunting World, Inc.*, supra, 537 F.2d at 11, Judge Friendly articulated the following formulation as one hopefully somewhat more useful:

"A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Manufacturers Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968).[7]

### Descriptiveness

■ "B–100" of course is neither an existing nor coined word, but rather is a combination of a letter and numeral. Numerals and letters may be valid trademarks "if they are entirely fanciful and arbitrary, if they have no connection with the article or any of its features, or if they are designed solely, or at least primarily, to indicate origin." 3 Callman § 73.1. They are not valid if they describe or refer to the article or its characteristics. *Id.*

Thus, in *Armco Steel Corp. v. Watson*, 188 F.Supp. 554 (D.D.C.1960), the court ruled that the marks 17–4 PH and 17–7 PH, intended to designate particular brands of stainless steel products, were merely descriptive. This was so because the letters PH meant "precipitation hardening" and the figures signified proportions or the constituents of the alloys, and therefore identified the grade of the product, not the particular goods of the plaintiff, although the court went on to hold that a secondary meaning had developed in the name. *Ever-Ready Inc.*, 531 F.2d 366, 379 (7 Cir. 1976).

---

7. See *General Shoe Corp. v. Rosen*, 111 F.2d 95, 98 (4 Cir. 1940); *Union Carbide Corp. v.*

■ Here the letter "B" obviously refers to vitamin B, itself a generic term, and "100" denotes potency of the vitamin, an element of the product of which the potential buyer is or should be aware. The composite term as plaintiff itself uses it, is therefore a formulation intimately connected to the features of the product, and is not designed to indicate its source.

Plaintiff selected the term B–100 precisely because of the essential characteristics of its vitamin product. Although plaintiff testified that accepted trade practice did not identify a B complex vitamin by the designation B plus the potency of the individual factors, the relationship to existing practice is apparent. First, admittedly, it is an accepted trade practice to identify single entity vitamins, that is, vitamins C and E by letter name hyphenated with the potency of the tablet, as plaintiff itself did, e. g., C–100. See DX 13. Second, other B complex vitamins on the market apply the same technique of identifying letter name of the vitamin plus the potency. Many companies use the admittedly not infringing label "B–Complex 100", and some even use the allegedly infringing label, such as "Action B–50", itself. "B–100", while a foreshortening of the designation, is no less descriptive of the product. Third, the public now assumes it is buying 100 milligrams of a vitamin B complex when it sees a vitamin marked with B–100. B–100 was a term coined by plaintiff, but it is now associated with the product.

Application of the aforementioned principles of trademark law to the evidence at trial compels the conclusion that the primary purpose and effect of the designation "B–100" is to denote and describe the ingredients and qualities of the vitamin product to which it has reference. Hence the court finds the mark "B–100" to be "merely descriptive." See 3 Callman § 70.1.

*Secondary Meaning*

■ Under § 2(f) of the Lanham Act, a mark merely descriptive of a product is not entitled to protection unless it has acquired a secondary meaning and become distinctive. 15 U.S.C. § 1052(f). Plaintiff was therefore required to show "that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938); *W. E. Bassett Co. v. Revlon, Inc., supra,* 354 F.2d at 871. This it has not done.

■ Even if we accept plaintiff's evidence that when it introduced "B–100" the public knew the term only as a name, plaintiff's own witnesses testified that the public now associates "B–100" with a product containing 100 milligrams of vitamin B complex. Hence, the mark does not serve as an indication of origin. Indeed, a mark valid and exclusive at first may lose its distinctiveness and become generic. *Kellogg Co. v. National Biscuit Co., supra; Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 11–12; *Feathercombs Inc. v. Solo Products Corp., supra,* 306 F.2d at 256.

■ The worth of plaintiff's other evidence of advertising expenditures, as a measure of its effort to develop secondary meaning, depends on the success achieved. *Union Carbide Corp. v. Ever-Ready Inc., supra,* 531 F.2d at 380. The testimony as to the beliefs of the consuming public, however, plainly indicates that the public considers "B–100" as a product. Renee Browne's testimony that the public chooses a particular brand of "B–100" based on label, price or other reason simply reflects the lack of association of "B–100" with plaintiff.

As B–100 cannot be said to have acquired a secondary meaning, defendant has not infringed the trademark owned by plaintiff.[8]

8. Plaintiff's argument that secondary meaning in the making should be protected, while a correct statement of the law, see *National Lampoon, Inc. v. American Broadcasting Compa-* *nies, Inc.,* 376 F.Supp. 733, 747 (S.D.N.Y.), *aff'd,* 497 F.2d 1343 (2 Cir. 1974), is not supported by the evidence and must be rejected.

## IV.

### *Unfair Competition*

Plaintiff's second cause of action for unfair competition claims that defendant's use of the name "Century–B–100" is a "false designation of origin" and "false description or representation" of its vitamin label "B–100." Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This section provides for an action against use of a name which is likely to cause confusion or deceive purchasers into believing the source or origin of the goods is another. *National Lampoon, Inc. v. American Broadcasting Companies, Inc.,* 376 F.Supp. 733, 746 (S.D. N.Y.), *aff'd,* 497 F.2d 1343 (2 Cir. 1974); *Geisel v. Poynter Products, Inc.,* 283 F.Supp. 261, 266–68 (S.D.N.Y.1968). Plaintiff can succeed only if its mark is so associated with its goods that defendant's use of a similar mark constitutes a representation that its goods come from the same source. *Joshua Meier Co. v. Albany Novelty Mfg. Co.,* 236 F.2d 144, 147 (2 Cir. 1956).

We have held that "B–100" does not indicate to the public the source or origin of the vitamin but merely describes its ingredients. Defendant markets its own product under the clear trade name "basic organics" followed below it by "Century–B–100." Defendant's label is not like plaintiff's other than in its fair use, as part of the name of its product, of the term "B–100".

Plaintiff did not offer evidence at trial of actual customer confusion between its product and defendant's. In fact, there was positive testimony to the effect that customers are not confused but instead make choices among brands from the line of vitamin B complex products based on label, price or other reason. We note also, as pertinent, the other manufacturers' description of their products, for example, "B Complex 100", "Balanced B 50" and the like, as similar to both plaintiff's and defendant's designations.

In addition, the labels on the bottles of plaintiff's active division, Puritan's Pride, and inactive division, Doctor's Pride, and of its presumed licensee based upon a common directorship, Solgar, which give no notice to the public of either the existence of a trademark on the name "B–100" or the relationship to their parent or affiliate, Nature's Bounty, themselves serve to confuse the public as to origin of the product.

In sum, defendant has made no false or misleading designation of origin of its product or attempted to pass off its vitamins as those of plaintiff and cannot be found to have engaged in unfair competition under the Lanham Act.

## V.

Plaintiff's trademark "B–100" having been found merely descriptive of its product, without any secondary meaning, is not infringed by defendant's use of the label "Century–B–100" nor has defendant engaged in unfair competition by its use of such a designation.

Accordingly, the Clerk is directed to enter judgment in favor of defendant dismissing the complaint on the merits.

SO ORDERED.