**CAR–FRESHNER CORPORATION and Julius Samann, Plaintiffs,**

v.

**AUTO AID MANUFACTURING CORPORATION, Original Auto Parts Distributors, Inc. and Harvey Stevens, Defendants.**

**No. 76–CV–501.**

United States District Court,
N. D. New York.

Dec. 5, 1978.

---

Mackenzie Smith, Lewis, Michell & Hughes, Syracuse, N. Y., for plaintiffs; Watson, Cole, Grindle & Watson, Washington, D. C., Kevin M. Reilly, Syracuse, N. Y., F. M. deRosa, Walter D. Ames, Bernard L. Sweeney, Washington, D. C., of counsel.

Stuart R. Shaw, New York City, for defendants.

MUNSON, District Judge.

## MEMORANDUM–DECISION AND ORDER

This is an action for declaratory and injunctive relief, an accounting of profits, and treble damages for alleged trademark infringement and unfair competition. Primarily in issue are two trademarks registered by the plaintiffs, one for the term "Car-Freshner," and the other for the shape of a pine tree. The following may be considered as the Court's findings of fact and conclusions of law, as required by Rules 52(a) and 65 of the Federal Rules of Civil Procedure.

### I.

The plaintiffs' "Car-Freshner" and pine tree shape trademarks are registered with the Principal Register for Trademarks, maintained by the United States Patent Office. Both relate to air deodorizers manufactured and marketed by plaintiff Car-Freshner Corporation, which deodorizers are comprised of absorbent bodies impregnated with a perfumed air deodorant. The "Car-Freshner" trademark was registered on March 24, 1959, and assigned Trademark Number 675,796. The pine tree shape was

registered on August 8, 1961, as Trademark Number 719,498.[1]

The two trademarks in issue are owned by plaintiff Julius Samann, a Canadian citizen currently residing in Switzerland. Plaintiff Samann has granted exclusive licenses with respect to the two marks to plaintiff Car-Freshner Corporation, a New York corporation with its principal place of business in Watertown, New York. Car-Freshner Corporation manufactures and sells air deodorizers, insect removers, chrome polishes, window cleaners, and other car care products.

Defendant Harry Stevens, a New York resident, is the copyright owner[2] of logos and designs known as "Smilers," which logos appear *inter alia* upon hanging cardboard air deodorizers, bearing the shapes of mushrooms, grapes, plums, pears, bananas, and, most notably, pine trees, designed primarily for use in the home, office, or automobile. Defendant Stevens has assigned his rights in the "Smilers" to H. Stevens Enterprises, Inc., a New York corporation, which in turn has granted a license to defendant Auto Aid Manufacturing Corporation (Auto Aid) to manufacture the entire line of "Smilers."

Defendant Original Auto Parts Distributors, Inc. (Original), also a New York Corporation, distributes approximately 10,000 automobile-related products to wholesalers and retailers throughout the United States. Among the products distributed by Original, at least in the past, have been plaintiffs' automobile deodorizers.

Plaintiffs' Complaint contains four related causes of action. The first two allege trademark infringement, under both common law and the Lanham Trademark Act, 15 U.S.C. §§ 1051 et seq.,[3] by the defendants of plaintiffs' "Car-Freshner" and pine tree shape trademarks. The third count alleges unfair competition on the part of the defendants. The fourth claim is one for wrongful dilution of plaintiffs' trademarks under New York General Business Law § 368–d (McKinney's 1968).[4] Jurisdiction over the first two causes of action is alleged under Title 28 U.S.C. § 1338(a), see also 15 U.S.C. § 1121, the remaining two having been properly asserted as pendent claims. See *Armstrong Co. v. NU–Enamel Corp.*, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938).

Contained within the defendants' Answer are two counterclaims, through which they

---

1. The pine tree shape was originally registered by plaintiff Samann on or about September 14, 1954, as Trademark Number 595,047. The trademark was cancelled by Judge R. Dorsey Watkins of the District of Maryland. Judge Watkins found that while a descriptive but non-functional shape such as plaintiff's pine tree could acquire secondary meaning, and thereby become registerable, the pine tree shape had not done so at the time the plaintiff applied for the trademark, coming a mere month after the shape was first introduced into the market. *Car-Freshner Corporation v. Marlenn Products Company*, 183 F.Supp. 20, 28 (D.Md.1960). Judge Watkins went on to state, however, that he believed the shape had acquired secondary meaning by 1958, the year in which the defendant in that case entered the market with its competing product. *Id.* at 42.

2. Defendant Stevens has indicated that he has applied for trademark registration for his "Smilers" logos.

3. 15 U.S.C. § 1114 provides:
   Remedies; infringement; innocent
   infringement by printers
   and publishers

(1) Any person who shall, without the consent of the registrant—
   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;
   \* \* \* \* \* \*
shall be liable in a civil action by the registrant for the remedies hereinafter provided.

. . .

4. That section provides:
   § 368–d. Injury to business reputation; dilution
   Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

seek to have this Court cancel plaintiffs' trademark registrations for the term "Car-Freshner" and the pine tree shape.[5] The plaintiffs' Reply to those counterclaims was timely filed, but through inadvertence was not served upon the defendants until some time thereafter. Despite defendants' request for Default Judgment upon those counterclaims, the Court will overlook any possible technical default and consider all of the claims upon their merits.

Presently pending before this Court are cross-motions brought on by the parties. The plaintiffs have moved for an Order granting Summary Judgment upon their claims or, in the alternative, for an Order granting a Preliminary Injunction. The defendants have opposed those motions, and have separately moved for an Order granting them Summary Judgment upon their counterclaims. Defendants also seek an Order compelling the plaintiffs to proceed with discovery as requested by the defendants.

## II.

A trademark, both at common law and under the Lanham Trademark Act, is generally thought of as any word, name, symbol, device, or any combination thereof adopted and used by a person or entity to identify his product. 15 U.S.C. § 1127; Callmann, Unfair Competition Trademarks and Monopolies § 65 (3d Ed. 1969) (hereinafter, simply Callmann). Registration of a trademark under the Lanham Act is prima facie evidence of the registrant's right to exclusive use of that mark. *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312 (U.S. Court of Customs and Patent Appeals 1976); *Nature's Bounty, Inc. v. Basic Organics*, 432 F.Supp. 546 (E.D.N.Y.1977); Callmann §§ 66.3, 97.3(b). Mere registration, how-

ever, does not foreclose attack upon the validity of a trademark. On the other hand, a trademark which has become incontestable through five consecutive years of continuous use following registration, in accordance with section 15 of the Lanham Act, as amended 15 U.S.C. § 1065, may only be impeached upon the narrow grounds set forth in section 33(b) of the Act, 15 U.S.C. § 1115(b). *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976), cert. den. 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). The Court will decide the present motions based upon the assumption that neither of the trademarks in issue have become incontestable, inasmuch as the plaintiffs have neither proven nor alleged the filing of an affidavit of incontestability, as required by section 15(3) of the Lanham Act, as amended, 15 U.S.C. § 1065(3), as a prerequisite to incontestability.[6]

Courts in this and other circuits have generally classified trademarks as being in one of four categories, viz.: 1) generic, or commonly descriptive; 2) merely descriptive; 3) suggestive; or 4) arbitrary or fanciful. *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977), cert. den. 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Abercrombie & Fitch Co. v. Hunting World, Inc. (II)*, 537 F.2d 4 (2d Cir. 1976).

Generic trademarks have generally been described as naming the product itself, or being the genus of which the product is a species. *Miller Brewing Co. v. G. Heileman Brewing Co., supra* ("lite beer"); *Abercrombie & Fitch Co. v. Hunting World, Inc. (II), supra; CES Pub. Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11 (2d Cir. 1975) ("consumer electronics"). Generic trademarks are not registerable under any circumstances, regardless of how successful

---

5. The Answer also contained an antitrust counterclaim which was dismissed by Order of this Court dated August 9, 1977.

6. The question of whether or not the two trademarks at bar have become incontestable will not affect the determination of the motions *sub judice.* While inconstability may remove from issue the question of validity of the trademarks, see *Union Carbide Corp. v. Ever-Ready Inc.,*

*supra,* absent a claim that the trademark has become generic or commonly descriptive, see 15 U.S.C. § 1065(4), there nevertheless remains the factual question of likelihood of confusion. Thus, the case is inappropriate for resolution by motion for Summary Judgment irrespective of whether or not the marks have become incontestable.

efforts have been in developing secondary meaning.[7]  *Id.;* see also Callmann § 77.2. The reason for this is not difficult to fathom.  To allow exclusive use by one producer or marketer of the generic name of a product would be equivalent to creating a monopoly in that particular product, something never intended by Congress when it enacted the Lanham Act.  *Abercrombie & Fitch Co. v. Hunting World, Inc. (II), supra; CES Pub. Corp. v. St. Regis Publications, Inc., supra.*

The distinction between descriptive and suggestive trademarks is not easily stated, and is even less easily applied.  A descriptive trademark, while not generic, conveys to the consumer an immediate idea of one or more of the ingredients, qualities or characteristics of the product to which it is applied.  *Miller Brewing Co. v. G. Heileman Brewing Co., supra; Abercrombie & Fitch Co. v. Hunting World, Inc. (II), supra; Nature's Bounty v. Basic Organics, supra* ("B–100" vitamins); Callmann § 71.1.  A suggestive mark requires imagination, thought and perception in order for a consumer to associate it with a particular product.  *Id.*  A descriptive mark is registerable only upon a showing of secondary meaning, whereas a suggestive mark may be registered even absent such a showing.  *Miller Brewing Co. v. G. Heileman Brewing Co., supra; Abercrombie & Fitch Co. v. Hunting World, Inc. (II), supra.*

A mark which is arbitrary or fanciful is one bearing little or no relation with the product with which it is associated.  *Kampgrounds of Amer. v. N. Del. A–OK Campground,* 415 F.Supp. 1288 (D.Del.1976), aff'd. 556 F.2d 566 (3d Cir. 1977).  ("KOA"); Callmann § 71.1.  No showing of secondary meaning is required in order to register an arbitrary or fanciful trademark.  *Id.*

The validity of each of the trademarks now in issue has been considered in at least one previous action.  In *Car-Freshner Corporation v. Marlenn Products Company,* 183 F.Supp. 20 (D.Md.1960) plaintiffs' original registration of the pine tree shape as a trademark was cancelled, the court there finding that the shape, though non-functional, was "clearly descriptive of the ingredients, properties and function" of the product, air deodorizers, and that secondary meaning was not established as of the time of registration, which came a mere month after the trademark was first used by plaintiffs in the marketplace.  *Id.* at 27–28.  The court went on to state, in ruling upon plaintiffs' claim for unfair competition, that in its estimation the mark had acquired secondary meaning by 1958, the time when Marlenn Products Company entered the market.  *Id.* at 42.

The validity of plaintiffs' "Car-Freshner" trademark came under attack in *Car-Freshner Corporation v. Turtle Wax, Inc.,* 268 F.Supp. 162 (S.D.N.Y.1967), wherein plaintiff Car-Freshner Corporation sought to enjoin the defendant therein from selling, offering for sale, or advertising air deodorizers designated as "Car-Fresheners."  In granting the relief sought, Judge Herlands determined the mark to be descriptive, and found that both secondary meaning and likelihood of confusion had been sufficiently demonstrated to entitle the plaintiffs to the equitable relief sought.

While the matter is not without doubt, this Court is of the opinion that the term "Car-Freshner"[8] is merely descriptive, as applied to the competing products in issue, rather than generic or commonly descriptive.  Despite defendants' assertions to the contrary (Defendants' Memorandum of Law Point III), a car freshener does not

---

7.  Secondary meaning, as the term of art is used in relation to trademarks, refers to attribution by the consuming public of all products bearing that certain mark to one single source, though the identity of that common source is not necessarily known.  *Union Carbide Corp. v. Ever-Ready Inc., supra; Kampgrounds of Amer. v. N. Del. Campground,* 415 F.Supp. 1288 (D.Del. 1976);  Callmann § 77.1.

8.  It has been held that the intentional misspelling or use of a phonetic equivalent of an otherwise generic mark will not render it registerable.  *Miller Brewing Co. v. G. Heileman Brewing Co., supra* ("lite," when used as the equivalent of light with respect to beer, held to be generic, and therefore nonregisterable);  see also Callmann § 71.1(d).

freshen cars; rather, it deodorizes the air contained within automobiles (as well as homes, offices, and like places).[9] The plaintiffs' "Car-Freshner" trademark, which is accorded presumptive validity because of its registration, *Nature's Bounty, Inc. v. Basic Organics, supra*, is therefore valid absent a showing of lack of secondary meaning. Because this Court considers the determination of secondary meaning *vel non* to be an issue of fact, upon which proof should be taken, see Callmann § 77.3, the validity of the "Car-Freshner" trademark will not be determined upon a motion for Summary Judgment.[10]

The pine tree shape trademark, in this Court's estimation, rests on slightly different footing than the "Car-Freshner" mark. The shape, as applied to air deodorizers, is clearly neither functional nor essential to the product, and is therefore registerable, providing a proper showing is made in all other regards. *Application of Mogen David Wine Corporation*, 54 CCPA 1086, 372 F.2d 539 (1967); Callmann §§ 66.4, 71.4, 77.4(e)(5). Moreover, notwithstanding the court's holding to the contrary in *Marlenn Products Company*, see also Callmann § 71.-3, esp. fn. 66, this Court is of the opinion that the shape is not directly descriptive of the ingredients, properties or functions of the product, but is instead merely suggestive, requiring the operation of imagination or perception for a consumer to connect the shape of a pine tree with the functioning of an air deodorizer. As such, the Court holds that the mark is registerable even absent a showing of secondary meaning.

Plaintiffs claim infringement of both of their registered trademarks, as well as unfair competition, by the defendants' manufacture and sale of their "Smilers" pine-tree shaped air deodorizer (see Exhibit 1, appended to Defendants' Memorandum of Law), and their advertising to customers that they sell "car fresheners." The touchstone of both trademark infringement and unfair competition is likelihood of confusion. 15 U.S.C. § 1114; *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976); *Union Carbide Corp. v. Ever-Ready Inc., supra*. Among the factors most often associated with likelihood of confusion are: 1) the type of trademark involved; 2) similarity of design; 3) similarity of product; 4) identity of retail outlets and purchasers; 5) identity of advertising media; 6) the newcomer or junior user's intent; 7) the degree of care likely to be exercised by the consumer; and 8) evidence of actual confusion. *Union Carbide Corp. v. Ever-Ready Inc., supra; Grotrian, Helfferich, Schultz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975); *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538 (2d Cir. 1956). Surveys demonstrating actual consumer confusion, if validly conducted, may be received as evidence of likelihood of confusion. *Id.*; see also *James Burrough Ltd. v. Sign of Beefeater, Inc., supra*.

This Court believes that the issue of likelihood of confusion is one of fact and accordingly is not appropriately resolved upon a motion for Summary Judgment absent the most extraordinary circumstances.[11]

9. Interestingly enough, the terms "deodorizer" and "freshener" are not shown as being synonymous in either Webster's Third New International Dictionary (1971) or Roget's Thesaurus of Synonyms and Antonyms (1972).

10. Among the factors generally considered relevant to the question of secondary meaning are: 1) amount and manner of advertising; 2) sales volume; 3) length and manner of use of the trademark; 4) consumer survey results; and 5) direct consumer testimony. *Union Carbide Corp. v. Ever-Ready, Inc., supra*; see also Callmann § 77.3.

11. The result reached by the Court in *Venetianaire Corporation v. A. & P. Import Co.*, 302

F.Supp. 156 (S.D.N.Y.1969), aff'd, 429 F.2d 1079 (2d Cir. 1970), is not to the contrary. That case was one·of deliberate palming off, where likelihood of confusion was obvious from the striking similarities of the two packages in issue. See *Venetianaire Corporation of American v. A. & P. Import Co.*, 429 F.2d 1079 (2d Cir. 1970); see also *American Chicle Co. v. Topps Chewing Gum*, 208 F.2d 560 (2d Cir. 1953); see also *Menley & James Lab. v. Approved Pharm. Corp.*, 438 F.Supp. 1061, 1067 (N.D.N.Y.1977).

This case is also distinguishable from *Mushroom Makers, Inc. v. R. G. Barry Corporation*, 580 F.2d 44 (2d Cir. 1978), wherein the Second Circuit Court of Appeals found likelihood of

*James Burrough Ltd. v. Sign of Beefeater, Inc., supra; Union Carbide Corp. v. Ever-Ready Inc., supra; Abercrombie & Fitch Co. v. Hunting World, Inc. (I),* 461 F.2d 1040 (2d Cir. 1972); *John R. Thompson Co. v. Holloway,* 366 F.2d 108 (5th Cir. 1966). Plaintiffs' motion for Summary Judgment on its common law and Lanham Act trademark infringement claims, as well as its pendent claims for unfair competition and Trademark Dilution, will therefore be denied in all respects.

## III.

■ In order for a litigant in this Circuit to show entitlement to preliminary injunctive relief, in order to preserve the status quo *pendente lite*, he must demonstrate either: 1) a probability of success on the merits of the claim *and* possible irreparable harm if injunctive relief is not granted, or 2) a sufficiently serious question going to the merits in order to make it fair ground for litigation and a balance of hardships tipped decidedly in the litigant's favor. *Kampmeier v. Nyquest,* 553 F.2d 296 (2d Cir. 1977); *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973). To succeed on such a motion, under either prong of the test, a plaintiff must demonstrate the likelihood of irreparable injury. *State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745 (2d Cir. 1977). The same test applies with respect to trademark infringement actions in which preliminary injunctive relief is sought. See, e. g., *Selchow & Righter Company v. McGraw-Hill Book Company,* 580 F.2d 25 (2d Cir. 1978); see also *Charlie's Girls, Inc. v. Revlon, Inc.,* 483 F.2d 953 (2d Cir. 1973).

This Court finds that, with respect to the defendants' marketing of air deodorizers bearing the shape of a pine tree, the plaintiffs have established their entitlement to preliminary injunctive relief under either prong of the aforementioned test. Irreparable injury in the way of dilution of the trademark which plaintiffs have spent some seventeen years to establish and promote will befall them if the defendants are allowed to continue producing and marketing their pine tree shaped air deodorizer. Recovery of damages for such injury may well be inadequate compensation, in light of the speculative nature of such damages. This alone would suffice for a showing of irreparable harm. *Selchow & Righter Company v. McGraw-Hill Book Company, supra.* Additionally, the plaintiffs have submitted some evidence tending to demonstrate the inferiority of defendants' allegedly-infringing product to that of their own. While, as defendants assert, this may not be relevant upon the issue of infringement, it is highly probative of irreparable harm which the plaintiffs could suffer through consumers' confusing the defendants' inferior product with those marked by the plaintiffs. *Louis Rich, Inc. v. Horace W. Longacre, Inc.,* 423 F.Supp. 1327 (E.D.Pa.1976); *Franklin Mint, Inc. v. Franklin Mint, Ltd.,* 331 F.Supp. 827 (E.D.Pa.1971); Callmann § 66.3.

Insofar as probability of success is concerned, the Court is persuaded that the plaintiffs have made a sufficient showing. Based, not necessarily upon a side-by-side comparison, see *Union Carbide Corp. v. Ever-Ready Inc., supra; James Burrough Ltd. v. Sign of Beefeater, Inc., supra,* but upon the fact that the products are the same; the channels of distribution would appear to be the same; the products' shapes and packages strikingly similar; the fact that defendant Original has, on occasion, substituted its product for the plaintiffs' in

---

confusion as a matter of law. The key factors upon which that conclusion was based were that the case "involve[d] trademarks which are merely the singular and plural forms of the same word and substantially identical goods directed at the same market and sold through the same outlets," thereby making it "difficult to conceive of any reason to distinguish them." *Id.* at 3882. By way of contrast to the situation presented in *Mushroom,* where both parties' products were identified by the trademark in issue, this case involves the shape of competing products. When the proof is in, the products in this case may well be found to be identified, by many consumers, by their shapes. The fact remains, however, that they may also be identified by their respective names, "Car-Freshner" and "Smilers," both of which appear rather prominently upon the packages in which the products are marketed.

filling customer orders; and the fact that the product in issue is relatively inexpensive and fairly characterized as an impulse item, the Court finds that the plaintiffs have sufficiently demonstrated likelihood of confusion and, therefore, likelihood of success upon the merits, to entitle them to preliminary injunctive relief. The equities in this case mandate that the senior users and, indeed, the consuming public, be protected from the likelihood of confusion which is now present, and will continue to be, if the junior users are allowed to continue producing and marketing their pine tree shaped air deodorizer. *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2d Cir. 1976); *James Burrough Ltd. v. Sign of Beefeater, Inc., supra; Nature's Bounty, Inc. v. Basic Organics, supra; E. I. DuPont de Nemours & Co. v. Yoshida International, Inc.*, 393 F.Supp. 502 (E.D.N.Y.1975). Balanced against the potential harm to both the plaintiffs and the consuming public, the harm which the defendants will suffer if enjoined from utilizing the shape of a pine tree, one of several shapes utilized by them, in manufacturing air deodorizers is relatively slight.

The plaintiffs are not, however, entitled to injunctive relief against defendants' use of the term "Car-Freshner." The only infringing use of that mark alleged in the Complaint was the defendants' publication of a booklet describing their products, which booklet was never designed or intended to reach the public, but was instead intended as a catalogue of defendant Original's products available to wholesale customers. Fair use of a descriptive trademark, such as when the mark is utilized solely to describe the products of another, is an available defense to a trademark infringement action. 15 U.S.C. § 1115(b)(4); *Abercrombie & Fitch Co. v. Hunting World, Inc. (II), supra.* The Court cannot say with any degree of certainty that the defendants' use of such a highly descriptive term as "car freshener" does not fall within the fair use defense. Moreover, such limited use, if continued, will not cause sufficiently serious irreparable injury to the plaintiffs to warrant granting of the exceptional remedy sought, a preliminary injunction. The plaintiffs' motion for preliminary injunctive relief with regard to the "Car-Freshner" trademark is accordingly denied.

## IV.

The defendants' motion for discovery was neither briefed nor argued. Moreover, no affidavit was filed by the defendants, as required in all discovery-related motions by virtue of Rule 46 of the General Rules of the United States District Court for the Northern District of New York. The discovery motion will therefore be denied, without prejudice, so that it may be renewed upon a proper showing.

## ORDER

The defendants are hereby enjoined from manufacturing, marketing or advertising their pine shaped air deodorizer, known as the "Smiler," pending the outcome of the present litigation. The defendants are further ordered to cease from utilizing the shape of a pine tree in any manner with respect to the manufacturing, marketing or advertising of their line of air deodorizers. The remainder of the motions made by both parties are denied with prejudice, except the defendants' motion for discovery, which is denied without prejudice.

It is so ordered.