PARK 'N FLY, INC., Plaintiff,

v.

PARK & FLY, INC., Defendant.

Civ. A. No. 79–596–S.

United States District Court,
D. Massachusetts.

Oct. 16, 1979.

M. Frederick Pritzker, M. Robert Dushman, Brown, Rudnick, Freed & Gesmer, Boston, Mass., Paul L. Gardner, Bruce S. Alpert, Los Angeles, Cal., for plaintiff.

Michael A. D'Avolio, East Boston, Mass., Joseph Iandiorio, Waltham, Mass., for defendant.

## MEMORANDUM AND ORDER ON MOTION FOR PRELIMINARY INJUNCTION

SKINNER, District Judge.

Park 'N Fly, Inc. has moved for a preliminary injunction against Park & Fly, Inc. for alleged trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* The plaintiff is a Missouri corporation which, since 1967, has been continuously engaged in the business of operating parking areas just outside major airports, and providing shuttle buses for its customers between the parking lots and the nearby airport. Plaintiff operates in St. Louis, Cleveland, San Francisco, New Orleans, Houston, and Montreal. It opened a lot in Boston in September 1979. Plaintiff conducts all of its business under the trade name "Park 'N Fly" which, together with its "logo", was registered in the United States patent office on August 31, 1971. Plaintiff has used this mark continuously for five consecutive years and has filed an affidavit setting forth these and other requisite facts with the Commissioner of Patents and Trademarks. Defendant is a Massachusetts corporation which, since October 1977, has operated an off-airport parking site with services similar to those of the plaintiff in East Boston, near Logan Airport. Defendant has advertised its business using the service mark "Park & Fly" on billboards and in various publications. The parties' businesses are immediately adjacent to each other.

■ Plaintiff seeks to enjoin defendant from using the mark "Park & Fly" on the ground that it is confusingly similar to plaintiff's registered service mark "Park 'N Fly", and thus infringes the latter mark in violation of 15 U.S.C. § 1114.[1]

A preliminary injunction should issue only if the moving party has "demonstrated a danger of immediate irreparable harm absent such injunctive relief . . ." and has ". . . shown a probability that it would prevail on the merits . . .", *Automatic Radio Mfg. Co., Inc. v. Ford Motor Co.*, 390 F.2d 113, 115 (1st Cir.), cert. denied, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). In light of the obvious likelihood of confusion between the two virtually identical names, and the difficulty of ascertaining the possible continuing loss of sales, goodwill and reputation, I find that irreparable injury is likely. *Omega Importing Corp. v. Petri-Kine Camera Co., Inc.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *Trak, Inc. v. Benner Ski KG*, 475 F.Supp. 1076 (D.Mass., 1979).

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, provides uniform federal rights and remedies for the protection of trade and service marks. Any person who uses a colorable imitation or copy of a valid trademark in commerce in a manner which is "likely to cause confusion or to cause mistake, or to deceive," will be liable to the owner of the trademark. 15 U.S.C. § 1114(1). The likelihood of confusion between these two adjacent operations is conceded; at issue is the validity of plaintiff's trademark.

■ Any person who wishes to distinguish his goods from others used in commerce may register his trademark under 15 U.S.C. § 1051. The Patent and Trademark Office may not refuse registration except upon grounds enumerated in § 1052, the only relevant one of which is § 1052(e)(1), denying protection to a trademark that is "merely descriptive" of the goods. This restriction is modified, however, by § 1052(f), allowing registration for a mark "which has become distinctive of the applicant's goods," i. e., has acquired secondary meaning. Once a trademark has been registered, there arises a statutory rebuttable presumption of its validity and of the registrant's exclusive right to use the mark in commerce. 15 U.S.C. § 1057(b). *Venetianaire Corp. of America v. A & P Import Co.*, 429 F.2d 1079, 1080 n.1 (2d Cir. 1970).

After five consecutive years of continuous use of the trademark, the right of the registrant to use such mark becomes incontestable, pursuant to § 1065, except that, under § 1065(4), "no incontestable right shall be acquired in a mark which is the common descriptive name of any article or substance." This provision complements § 1064, which provides for cancellation of a registration "at any time if the registered mark becomes the common descriptive name of an article or substance." 15 U.S.C. § 1064(c). A crucial distinction between "merely descriptive" and a "common descriptive name" thus becomes apparent, for under the former, a trademark may retain validity if it has acquired secondary meaning, whereas the latter may never retain statutory protection. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976).

■ Once a registered mark has become incontestable, "the registration shall be conclusive evidence of the registrant's exclu-

---

1. United States Magistrate Cohen, in his report of May 14, 1979, recommended denial of the requested relief, as he could not find that plaintiff had shown a probability that it would prevail on the merits. *Automatic Radio Mfg. Co., Inc. v. Ford Motor Co.*, 390 F.2d 113, 115 (1st Cir.), cert. denied, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). At the time of the report, however, plaintiff did not yet operate in Boston, and the Magistrate noted that "a change in circumstances such as the granting of all necessary permits and licenses necessary to conducting the business might well warrant re-application." As plaintiff now owns and operates an off-airport parking service in Boston, use of the two marks is far more likely to cause confusion. *John R. Thompson Co. v. Holloway*, 366 F.2d 108, 116 (5th Cir. 1966). Although defendant opened in Boston first, plaintiff's previously registered mark is entitled to protection if the plaintiff chooses to exploit it in this area. *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362–3 (2d Cir. 1959).

sive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). An opposing party may, however, contest the trademark by establishing any of seven listed defenses or defects, of which only the following "fair use" defense is applicable to this case: "that the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party." 15 U.S.C. § 1115(b)(4).

■ The threshold question in trade name infringement actions is whether the word or phrase was initially registerable or protectable. *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.*, 494 F.2d 3, 10 (5th Cir. 1974). To determine the "strength" of a particular trademark, federal courts have resorted to a rough classification scheme, whereby marks are categorized in ascending order of eligibility for protection, as either (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *S. S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 696 (1st Cir. 1979); *Abercrombie & Fitch v. Hunting World, Inc.*, 537 F.2d at 9. The Fifth Circuit has recently defined these terms:

A generic term is the name of a particular genus or class of which an individual article or service is but a member. Most courts hold that a generic term is incapable of achieving trade name protection. A descriptive term identifies a characteristic or quality of an article or service and, though ordinarily not protectable, may become a valid trade name if it acquires a secondary meaning. A suggestive term suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as descriptive. *General Shoe Corp. v. Rosen*, 111 F.2d 95, 98, 45 USPQ 196, 198–199 (4th Cir. 1940). A suggestive term requires no proof of secondary meaning in order to receive trade name protection. An arbitrary or fanciful term

bears no relationship to the product or service and is also protectable without proof of secondary meaning.

*The Vision Center v. Opticks, Inc.*, 596 F.2d 111, 115–116, 202 USPQ 333, 338 (5th Cir. 1979). *See also Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977). The basic policy underlying these fine distinctions is to reward the ingenious businessman while preventing governmental sanction of a monopoly gained when a competitor is not allowed to "describe his goods as what they are." *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975).

■ The final step in trademark law analysis is to relate these pigeonholes to the strictures of the Lanham Act. As generic trademarks have been held to be unprotectable through registration, *S. S. Kresge Co. v. United Factory Outlet*, 598 F.2d at 696; *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d at 79, they are considered synonymous with the term "common descriptive name", which is denied trademark protection under § 1064(c), and may not become incontestable under § 1065(4). *The Vision Center v. Opticks, Inc.*, 596 F.2d at 117 n.17, 202 USPQ at 340 n.17; *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d at 10. "Descriptive" terms may be attacked as "merely descriptive" under § 1052(e)(1), unless they have acquired secondary meaning, as defined in § 1052(f). Much of the litigation centers around the characterization of a term as "descriptive" and thus not subject to exclusive appropriation, or "suggestive", where, because it requires "imagination, thought and perception to reach a conclusion as to the nature of the goods," the mark is protected. *Stix Products, Inc. v. United Merchants & Mfrs. Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). The intricate balancing involved in the determination of "merely descriptive" is avoided, however, once a term has become incontestable, as no such defense is listed in § 1115(b). Instead, the registrant need only hurdle the lower obstacle of showing his

mark is not the generic or "common descriptive name" of the goods. § 1065(4).[2]

Few courts have dealt with the effect of incontestability in infringement cases, for until recently, this statutory protection has been construed to provide only a "shield", not a "sword". Beginning with an Assistant Patent Commissioner's opinion in *Rand McNally & Co. v. Christmas Club*, 105 USPQ 499 (Comm. of Pat. 1955), *aff'd* 242 F.2d 776, 44 CCPA 861 (1957), many federal courts indicated that incontestability could be used defensively, to prevent cancellation of registration, but not offensively, in an infringement action. *Tillamook County Creamery Assoc. v. Tillamook Cheese and Dairy Assoc.*, 345 F.2d 158 (9th Cir.), *cert. denied*, 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965); *John Morrell & Co. v. Reliable Packing Co.*, 295 F.2d 314 (7th Cir. 1961).

The Seventh Circuit recently undertook an exhaustive examination of the case law and the statutory provisions dealing with incontestability in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1966). The court persuasively pointed out that the offensive/defensive distinction was an unfortunate use of language in *Rand-McNally*, and that no such dichotomy was supported by statutory language. The court held:

> [A] plaintiff in an infringement action establishes conclusively, under § 1115(b), his exclusive right to use a trademark to the extent he shows his trademark has become incontestable under § 1065. Incontestability does not broaden a trademark in the sense that it allows a registrant to claim rights over a greater range of products than he would otherwise be entitled to claim; but once incontestability is established, registrant's mark is immune from challenge on any grounds not enumerated in § 1115(b). There is no defensive/offensive distinction in the statute, and we do not believe one should be judicially engrafted on to it. To the

extent that [*John Morrell & Co. v. Reliable Packing Co.*, 295 F.2d 314 (7th Cir. 1961)] holds that a plaintiff may not use the conclusive evidence rule of § 1115(b) in an infringement action and to the extent such a holding has not been overruled *sub silentio* by [*Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904 (7th Cir. 1968)], we overrule it now.

*Id.* at 377.

Although this holding has not been the subject of extensive subsequent litigation, at least the Eighth Circuit has questioned its earlier "sword-shield" analogy. *Compare Wrist-Rocket Manufacturing Co., Inc. v. Saunders Archery Co.*, 578 F.2d 727, 731 n.4 (8th Cir. 1978), *with Wrist-Rocket Manufacturing Co., Inc. v. Saunders Archery Co.*, 516 F.2d 846, 851 (8th Cir.), *cert. denied*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975).

I adopt the holding in *Ever-Ready, supra*, and rule that the plaintiff is entitled to rely on the incontestability provisions of § 1065. Defendant Park & Fly maintains, however, that incontestability only applies to the entire mark (words and logo) as described in the registration certificate, not to any part thereof. For this proposition, he cites the language of § 1115(b) stating that "the registration shall be conclusive evidence of the registrant's exclusive right to use the *registered mark* in commerce" and the case of *John R. Thompson v. Holloway*, 141 USPQ 355 (N.D. Tex.1964). There, the district court ruled that the plaintiff had incontestable rights in the composite mark "Holloway House", and not "Holloway" alone. Defendant Park & Fly asserts on this authority that it is entitled to use the name if it does not use the "logo". In actuality, the district court based its decision on a finding that no confusion was likely to result due to the limited geographical area of operation by the defendant. The ruling relied upon by defendant was gratuitous, since the court did not analyze the validity of the plaintiff's trademark. On appeal, the Fifth Circuit specifi-

---

2. In addition, of course, the registrant may be required to establish that none of the narrowly defined defenses of § 1115(b) apply.

cally found that the marks were incontestable, thereby granting plaintiff exclusive use of its mark in commerce. The court went on to allow the defendant to retain its name because of the small likelihood of confusion, but it further found,

> If plaintiff does not expand the use of its "Holloway House" mark, then there will be no occasion to interfere with the defendants' use of their tradename "Holloway's." However, if future expansion of the plaintiff's business or reputation does occur and confusion becomes likely, the rights of the plaintiff are definitely superior to those of the defendants.

366 F.2d 108, 116 (5th Cir. 1966). The implication is that, once confusion is shown, the plaintiff would win because of its incontestable rights. No mention is made of "merely descriptive" or "suggestive" terms because it is assumed that those defenses would be unavailable against an incontestable mark.

The statute contains no language that would support defendant's rigid theory of according protection only to the exact replica of the mark as contained in the registration. This interpretation would render the incontestability provisions virtually useless, for a single word modification would lead to a loss of § 1115 protection. Since a registrant is protected against confusingly similar names, "incontestability" should afford at least equal protection.

■ Defendant further argues that "Park 'N Fly" is a generic or a common descriptive name, in reliance on § 1064(c) and § 1065(4). The First Circuit has defined "generic terms" as "those which refer to a genus of which a particular product is a species, without distinguishing its source or origin," *S. S. Kresge Co. v. United Factory Outlet*, 598 F.2d at 696, citing as examples, "The Pill" for an oral contraceptive tablet, *Application of Searle & Co.*, 360 F.2d 650 (CCPA 1966) and "Cola" for a soft drink made from cola nuts, *Coca-Cola v. Snow Crest Beverages, Inc.*, 162 F.2d 280 (1st Cir. 1947). Other trademarks found to be common descriptive words are "light" for low calorie beer, *Miller Brewing Co. v.*

*G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977); "Consumer Electronics" for a specific trade magazine, *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11 (2d Cir. 1975); and "Rugger" clothing similar to that used in rugby, *Anvil Brand, Inc. v. Consolidated Foods Corp.*, 464 F.Supp. 474 (S.D.N.Y.1978). In the *Kresge* case, *supra*, the First Circuit found "mart" to be generic for a store or market.

"Park 'N Fly", although arguably "merely descriptive" of an off-airport parking operation, cannot be characterized as describing the genus for the parties' businesses. There is no evidence that "Park and Fly" has become generic through public recognition of the service, i. e., "when you leave, you should find a park and fly for your car." *See, e. g., King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577 (2d Cir. 1963). ("Thermos"). The present case appears closely analogous to *Car Freshener Corp. v. Auto Aid Mfg. Corp.*, 461 F.Supp. 1055 (N.D.N.Y.1978), where "car-freshener" was found to be merely descriptive rather than generic, for "a car freshener does not freshen cars; rather, it deodorizes the air contained within automobiles." *Id.* at 1059–1060.

■ The "fair use" defense of § 1115(b)(4), the defendant's final argument, is unavailable if the name is used "as a trade or service mark." *Venetianaire Corp. of America v. A & P Import Co.*, 429 F.2d 1079, 1082 (2d Cir. 1970). Defendant's use of "Park & Fly" is clearly as a trade or service mark, and not as a description of services alone.

■ Accordingly, I find that the plaintiff is likely to succeed on the merits by establishing (1) that its mark is incontestable; and (2) that it has been infringed upon by the defendant's use of a similar and concededly confusing service mark. The likelihood of irreparable injury having also been established, it follows that the plaintiff is entitled to a preliminary injunction as requested.

So Ordered.