**PARK 'N FLY, INC., Plaintiff-Appellee,**

v.

**DOLLAR PARK AND FLY, INC., Defendant-Appellant.**

No. 82–3220.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1983.

Decided Oct. 13, 1983.

Certiorari Granted March 5, 1984. See 104 S.Ct. 1438.

---

Paul L. Gardner, Beverly Hills, Cal., Spensley, Horn, Jubas & Lubitz, Los Angeles, Cal., for plaintiff-appellee.

J. Pierre Kolisch, Kolisch, Hartwell & Dickinson, Portland, Or., for defendant-appellant.

Before KENNEDY, TANG, and POOLE, Circuit Judges.

KENNEDY, Circuit Judge:

Dollar Park and Fly, Inc. (Dollar) appeals from a judgment of the district court upholding the validity of the service marks registered by Park 'N Fly, Inc. (Park 'N Fly) and enjoining Dollar's use of the name "Park and Fly." We conclude that although there is insufficient evidence to invalidate Park 'N Fly's service marks, Park 'N Fly is not entitled to the injunctive relief given by the district court.

Park 'N Fly and Dollar both operate long term parking lots near airports and provide shuttle bus service to and from the airport terminals. Park 'N Fly has been in business since 1967 and has operations in St. Louis, Cleveland, Boston, Atlanta, Houston, Memphis, and San Francisco. Dollar has been in business since 1973 and operates only in Portland, Oregon.[1]

In 1969 Park 'N Fly filed with the U.S. Patent and Trademark Office an application for registration of a service mark consisting of an airplane logo and the words "Park 'N Fly." The registration issued as Registration No. 919,591 in 1971, and Park 'N Fly obtained incontestable status for the mark in 1977. Later in 1977 Park 'N Fly filed an application for registration of a service mark consisting solely of the words "Park 'N Fly." That registration issued as Registration No. 1,111,966 in 1979.

Since the registration of its first mark, Park 'N Fly has been confronted with the rise of over a dozen airport parking lots operating under names akin to "Park and Fly." Park 'N Fly has procured a cessation of the use of the name in most cases through letters. In some cases, however, it has resorted to litigation. *See, e.g., Park 'N Fly, Inc. v. Park & Fly, Inc.,* 489 F.Supp. 422 (D.Mass.1979).

Park 'N Fly filed this suit, and Dollar subsequently counterclaimed. After the issues were reduced to Park 'N Fly's request for an injunction and Dollar's request for the cancellation of Park 'N Fly's marks, the trial court found that Park 'N Fly's registrations were valid and that Dollar had infringed. The district court entered judgment enjoining Dollar from using the words "Park and Fly," "Park & Fly," "Park (with an airplane depicted) Fly," "Fly and Park," or any other combination confusingly similar to "Park 'N Fly."

On the merits of the appeal, we begin by noting that the cases identify four categories of trademarks: (1) generic (or common descriptive), (2) merely descriptive, (3) suggestive, and (4) arbitrary or fanciful. *See Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011, 1014–15 (9th Cir.1979) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–11 (2d Cir.1976)). A generic (or common descriptive) mark is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species; a merely descriptive mark specifically describes a characteristic or ingredient of an article or service; a suggestive mark suggests rather than describes an ingredient, quality, or characteristic requiring imagination, thought, and perception to determine the nature of the goods; and an arbitrary or fanciful mark is usually a word or words invented solely for use as a trademark. *Surgicenters, supra,* 601 F.2d at 1014–15. A generic mark cannot become a registrable trademark under any circumstances, a merely descriptive mark can become a registrable trademark by acquiring a secondary meaning (i.e., becoming distinctive of the applicant's goods), and suggestive and arbi-

1. An independent company owned by the owners of Dollar provides the same service at the Seattle-Tacoma airport. We do not reach Dollar's claims with respect to the Washington operation in our resolution of this case.

trary or fanciful marks are registrable without regard to secondary meaning. *Id.; see also* 15 U.S.C. § 1052(e), (f).

■ After a registered mark has been in continuous use for five years, the registrant may obtain incontestable status for the mark pursuant to 15 U.S.C. § 1065. Once a mark has become incontestable, registration is conclusive evidence of the registrant's exclusive right to use the registered mark subject only to the cancellation provisions of 15 U.S.C. § 1064 and the defenses enumerated in 15 U.S.C. § 1115(b). If an incontestable mark becomes generic, it may be cancelled pursuant to 15 U.S.C. § 1064(c), but an incontestable mark cannot be challenged for being "merely descriptive." *See Abercrombie & Fitch Co., supra,* 537 F.2d at 12–13; *Park 'N Fly, Inc. v. Park & Fly, Inc.,* 489 F.Supp. 422, 424 (D.Mass. 1979).

In challenging the validity of Park 'N Fly's Registration No. 919,591, Dollar's argument is that "Park 'N Fly" is a generic mark with respect to airport parking lots. This court has addressed the standard for determining genericness in several cases. In *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011 (9th Cir.1979), we said: "If buyers take the word to refer only to a particular producer's goods or services, it is not generic. But if the word is identified with all such goods or services, regardless of their suppliers, it is generic." *Id.* at 1016. In *Anti-Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296 (9th Cir.1979), we said: "[T]he [challenged] trademark is valid only if 'the primary significance of the term in the minds of the consuming public is not the product but the producer.'" *Id.* at 302 (quoting *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938)); *see also Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.,* 684 F.2d 1316, 1319 (9th Cir.1982), *cert. denied,* ——

U.S. ——, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

Dollar's primary argument that "Park 'N Fly" is generic is based on the words themselves.[2] The words "park" and "fly" are both ordinary words, and at least the former, or some derivative, seems essential in describing the business. Further, the word "park" followed by a verb suggesting the activity to follow occurs frequently in commerce (e.g., "park and ride," "park and shop"). Dollar also presented some evidence, though not conclusive, that "park and fly" or some close variant has been used by a number of operators, and the business was referred to by participants at airport car rental agency conventions as the "park and fly" business.

■ The above strongly suggests that the validity of Park 'N Fly's mark is questionable. It cannot compensate, however, for Dollar's failure to provide any evidence with respect to consumer perceptions. We must decide the case on the record before us, not on our own set of assumptions. Without evidence that to the consuming public the primary significance of the term is to denote the service Park 'N Fly offers and not its source, we are without a sufficient evidentiary basis to find Park 'N Fly's mark generic.

This distinguishes the present case from our decision in *Surgicenters.* On its face, the term "surgicenter" is a compound not necessarily more generic than "park and fly," and it would seem the two cases could be decided the same way. But the party attacking the trademark in *Surgicenters* made a record substantially different from that made by Dollar in this case. In *Surgicenters,* the trial court had before it forty-five exhibits which showed that in the medical community and for the consumer public generally, "surgicenter" was used in a generic sense. 601 F.2d at 1017. We noted that the district court in *Surgicenters* based its analysis on a careful examination

---

**2.** If "park and fly" is a generic term for the service offered by Park 'N Fly, the mark "Park 'N Fly," as a mere phonetic equivalent, is infirm as a service mark. *See Miller Brewing*

*Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 81 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978).

of both dictionary definitions and substantial evidence of generic use by the consuming public. 601 F.2d at 1020. Such evidence was absent here.

Given the incontestable status of Park 'N Fly's Registration No. 919,951 and Dollar's failure to show that the mark is generic, we conclude that on this record the district court did not err in refusing to invalidate that mark.[3]

Turning to the question of injunctive relief, we first consider the effect for this purpose of a mark's incontestable status. Park 'N Fly's argument that the incontestability of its mark entitles it to injunctive relief is based upon the Seventh Circuit's holding in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976), that "a *plaintiff in an infringement action* establishes conclusively, under § 1115(b), his exclusive right to use a trademark to the extent he shows his trademark has become incontestable under § 1065." *Id.* at 377 (emphasis supplied). The law in this circuit, however, is different. Under our holding in *Tillamook County Creamery Ass'n v. Tillamook Cheese & Dairy Ass'n*, 345 F.2d 158, 163 (9th Cir.), *cert. denied*, 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965), a registrant can use the incontestable status of its mark defensively, as a shield to protect its mark against cancellation and to protect its right to continued use of the mark, but not offensively, as a sword to enjoin another's use. We recently reaffirmed this offensive/defensive distinction in *Prudential Insurance Co. of America v. Gibraltar Financial Corp. of California*, 694 F.2d 1150, 1153 (9th Cir.1982), *cert. denied*,

— U.S. ——, 103 S.Ct. 3538, 77 L.Ed.2d 1389 (1983).

Although *Tillamook* is not express on the point, we believe the import of its rule to be that in an action for infringement a party can defend against the effect of federal registration by a showing that would suffice to cancel the mark in question were it not incontestable. Thus, Park 'N Fly's registration is of no import if its mark would not be entitled to continued registration but for its incontestable status.

Anticipating this inquiry, Park 'N Fly argues that its mark is suggestive with respect to airport parking lots. We are unpersuaded. Given the clarity of its first word, Park 'N Fly's mark seen in context can be understood readily by consumers as an offering of airport parking—imagination, thought, or perception is not needed. Simply understood, "park and fly" is a clear and concise description of a characteristic or ingredient of the service offered—the customer parks his car and flies from the airport. We conclude that Park 'N Fly's mark used in the context of airport parking is, at best, a merely descriptive mark.

Park 'N Fly has made no claim that its mark has acquired a secondary meaning as contemplated by federal trademark law. Thus, Park 'N Fly's mark would not be entitled to continued registration but for its incontestable status, and its federal registration is of no import. Since Park 'N Fly has asserted no other basis for injunctive relief, we conclude that it is not entitled to have Dollar enjoined from using the name "park and fly."[4]

---

3. Dollar argues that Registration No. 1,111,966 is cancellable without a showing of genericness in that it has not yet become incontestable. This argument follows from Dollar's position that since Dollar does not use the airplane logo of Registration No. 919,591, it infringes if at all only on Registration No. 1,111,966. This underlying proposition is disposed of, however, by our holding in *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794 (9th Cir.1970), that "a trademark infringer need not expropriate the entire mark of another to be guilty of an enjoinable offense if the imitation is of the most salient feature of the mark in question."

*Id.* at 801. Since the words "park and fly" constitute the most salient feature of Registration No. 919,591, any infringement on Registration No. 1,111,966 would also be an infringement on Registration No. 919,591. Thus, the cancellation of 1,111,966 would be an idle act, and we decline to consider it.

4. Dollar argues that it is entitled to rely on the prior innocent use exception of 15 U.S.C. § 1115(b) insofar as the Washington business operated by the owners of Dollar has been using "Park and Fly" since 1970, and it argues that there is no likelihood of confusion justify-

The district court's refusal to invalidate Park 'N Fly's marks is affirmed. The district court's injunction against Dollar is reversed.

**AFFIRMED IN PART; REVERSED IN PART.**

ing an injunction insofar as Park 'N Fly has no present intention of expanding into the Pacific Northwest. Our disposition of this case makes it unnecessary for us to reach either of these issues.