The **CHRONICLE PUBLISHING COMPANY**, Plaintiff,

v.

**CHRONICLE PUBLICATIONS, INC.**, Defendant.

No. C–87–1897 DLJ.

United States District Court, N.D. California.

Aug. 7, 1989.

---

Neil Shapiro and Kenneth M. Kwartler, of the law firm of Cooper, White & Cooper, San Francisco, Cal., for plaintiff.

John P. Sutton, of the law firm of Limbach, Limbach & Sutton, San Francisco, Cal., for defendant.

## ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

JENSEN, District Judge.

The Court heard plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment on July 26, 1989. Appearing for plaintiff was Neil L. Shapiro and Kenneth M. Kwartler of Cooper, White & Cooper. Appearing for defendant was John P. Sutton of Limbach, Limbach & Sutton.

Plaintiff filed the present motion for summary judgment of the first, third, fourth, seventh and ninth causes of action within its amended complaint. Defendant moves for summary judgment of all plaintiff's causes of action.

After review of the briefs submitted by the parties, the oral argument of counsel and the applicable legal standard, the Court hereby GRANTS plaintiff's motion for partial summary judgment, and partially GRANTS defendant's motion for summary judgment. Specifically, the Court GRANTS plaintiff's motion as to the first, third, fourth, seventh and ninth causes of action, and GRANTS defendant's motion as to plaintiff's second and sixth causes of action.

### I.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law."

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.' " *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04

(9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986)) (emphasis in original). When judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a "light most favorable to the nonmoving party." *T.W. Electrical,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Summary judgment may issue "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 106 S.Ct. at 2553–54. The standard for judging either a defendant's or plaintiff's motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Under this standard, the Court finds that no genuine issue remains regarding the following material facts. Plaintiff, publisher of the San Francisco Chronicle newspaper, operates a book publishing division specializing in illustrated, high quality books on subjects ranging from history and biography to travel and cuisine. Plaintiff's book division was established in 1959 with the publication of compilations of stories and features from the San Francisco Chronicle. In 1968, plaintiff began publishing books other than compilations of materials from its newspaper. With its expansion into traditional book publishing, plaintiff's book division adopted the trade name "Chronicle Books" and began placing the label "Chronicle" or "Chronicle Books" on the dust jacket and spine of its books. Plaintiff has published over 500 titles and has become an established, medium-sized book publisher.

Defendant, Chronicle Publications, Inc., is also a book publishing company. Formed in 1985, defendant currently publishes two books, "Chronicle of the 20th Century" and "Chronicle of the Year 1987," with a third book, "Chronicle of the Year 1988," to be distributed in September 1989. These books are comprised of written summaries and photographs outlining the major events of the time periods covered by each book. The publications are sold in many of the same bookstores that sell books published by plaintiff. Defendant identifies itself as the publisher of its books by placing the word "Chronicle" on each cover and "Chronicle Publications, Inc." on each title page.[1] Defendant's books are a commercial success as over 500,000 copies of the works have been sold.

Plaintiff filed its original complaint in this action in May 1988. The Court heard defendant's motion to dismiss on August 31, 1988. By Order dated August 9, 1988, the Court dismissed plaintiff's complaint insofar as it alleged violations of its proprietary interests by defendant's use of the word "Chronicle" in its book titles. Plaintiff filed an amended complaint on October 11, 1988, alleging causes of action for: (1) false designation of origin under 15 U.S.C. section 1125(a); (2) federal trademark infringement; (3) trade name infringement under California Business and Professions Code sections 14400 and 14402; (4) unfair competition in violation of sections 17200 and 17203 of the California Business and Professions Code; (5) false advertising in violation of sections 17500 and 17535 of the California Business and Professions Code; (6) trademark infringement under California Business and Professions Code section 14320; (7) common law trademark and trade name infringement; (8) common law false advertising; and (9) common law unfair competition. All of plaintiff's claims are based on defendant's use of the trade

---

1. Defendant has altered the cover on the second reprint of "Chronicle of the 20th Century" and "Chronicle of the Year 1988" to read "Chronicle Publications" instead of simply "Chronicle." Defendant states that this practice will continue for all future publications.

names and trademarks "Chronicle" and "Chronicle Publications."

## II.

Plaintiff's first cause of action alleges that defendant's placement of the word "Chronicle" on its book covers and "Chronicle Publications" on the title pages of its publications, constitutes unfair competition in violation of section 43(a) of the Lanham Act. Defendant argues that plaintiff's trademarks and trade names, "Chronicle," "Chronicle Books" and "Chronicle Publishing," are generic terms and therefore not protected under the Lanham Act.

▬ Section 43(a) of the Lanham Act "makes a person liable for using a false description of origin in connection with any goods and services put into commerce." *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). There is no requirement that a trademark be registered for an action to be maintained under section 43(a). *Tonawanda Street Corp. v. Fay's Drug Co., Inc.,* 842 F.2d 643, 647 (2nd Cir.1988). However, generic terms are not entitled to protection under the Lanham Act, *Tonawanda,* 842 F.2d at 647 (2nd Cir.1988), and a defendant raising this affirmative defense bears the burden of providing the Court with evidence demonstrating that a plaintiff's trademarks are generic. *Official Airline Guides, Inc. v. Goss,* 856 F.2d 85, 87 (9th Cir.1987); *Park N' Fly, Inc. v. Dollar Park & Fly, Inc.,* 718 F.2d 327, 330 (9th Cir.1983), *rev'd on other grounds,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

To determine whether plaintiff's marks are generic, it is necessary to analyze the facts of this action within the legal continuum defining the legal rights of holders of alleged trade names and trademarks. The federal courts have placed trademarks and trade names into four categories: (1) generic or common descriptive; (2) merely descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Park N' Fly,* 718 F.2d at 329; *Towawanda,* 842 F.2d at 647. The Ninth Circuit defines these categories as follows:

A generic mark is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species; a merely descriptive mark specifically describes a characteristic or ingredient of an article or service; a suggestive mark suggests rather than describes an ingredient, quality, or characteristic requiring imagination, thought, and perception to determine the nature of the goods; and an arbitrary or fanciful mark is usually a word or words invented solely for use as a trademark.

*Park N' Fly,* 718 F.2d at 329 (citing *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011, 1014–15 (9th Cir.1979)).

▬ The placement of a trade name or trademark within one of these categories defines the requirements for sustaining a claim for infringement of that mark. Generic marks are not protected under any circumstances, merely descriptive marks are protectable if plaintiff demonstrates that the mark has acquired a secondary meaning by becoming distinctive of the applicant's goods, and suggestive and arbitrary marks are protectable without a showing of secondary meaning. *Park N' Fly,* 718 F.2d at 329–30; *Surgicenters,* 601 F.2d at 1014–15.

▬ The Court finds that the marks "Chronicle," "Chronicle Books" and "Chronicle Publishing" are not generic. A mark is not generic if " 'the primary significance of the term in the minds of the consuming public is not the product but the producer.' " *Park N' Fly,* 718 F.2d at 330 (quoting *Kellogg Co. v. Nat'l Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938)). There is no evidence before the Court indicating that consumers associate these marks exclusively with the type of books produced by plaintiff. The word "Chronicle" is not a synonym for book and the general consuming public does not perceive "Chronicle," "Chronicle Books" or "Chronicle Publishing" to exclusively describe a book or a type of book published by plaintiff. The vast majority

of books published by plaintiff are not chronicles of any kind.

In an attempt to show that the primary significance of plaintiff's marks to the consuming public is plaintiff's products, i.e., expensive, illustrated "coffee table" books containing compilations of photographs, rather than plaintiff as the producer, defendant offered the dictionary definition of the word "Chronicle." [2] This definition states that a "chronicle" is a "continuous and detailed historical account of events arranged in order of time without analysis or interpretation" or a "narrative". *Webster's Ninth New Collegiate Dictionary* (Merriam–Webster 1988). This Court notes that this dictionary definition itself does not mention books or book publishing and is clearly not so limited. Defendant's proffer is insufficient to support a finding that plaintiff's marks are generic. Thus, the Court must find, based on the evidence before it, that the marks "Chronicle," "Chronicle Books" and "Chronicle Publishing" are not generic terms for the products produced by plaintiff or its activities as a book publisher. *See Official Airline Guides*, 856 F.2d at 87 (defendant asserting the affirmative defense that a mark is generic must provide evidence of consumer perceptions); *Park N' Fly*, 718 F.2d at 330.

The Court finds that plaintiff's marks are suggestive. The terms are not arbitrary as there is some nexus between plaintiff's books and the marks "Chronicle," "Chronicle Books" and "Chronicle Publishing." It is not unreasonable for a consumer to associate these marks with the type of books published by plaintiff. With a small dose of imagination, a consumer could determine that plaintiff is engaged in the publishing of "coffee table" type books based on these marks. Thus, while there is not a close enough correlation between plaintiff's marks and its books to make the marks generic or descriptive, there is

enough of a nexus to place the marks in the suggestive category. This determination that plaintiff's marks are suggestive eliminates the requirement that plaintiff prove that its marks have acquired a secondary meaning. *Park N' Fly*, 718 F.2d at 329–30; *Surgicenters*, 601 F.2d at 1014–15. Therefore, as defendant's affirmative defense fails, the Court must now turn to the merits of plaintiff's claim under section 43(a).

■ To state a claim under section 43(a), plaintiff must demonstrate (1) that it possesses a valid, protectable proprietary interest in the trademark or trade name, and (2) defendant's use of its mark creates a "likelihood of confusion" in the consuming public. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1198–1202 (9th Cir.1979).

■ Trade names are "individual names and surnames, firm names and trade names used by manufacturers, industrialists, merchants, agriculturist, and others to identify their businesses." 15 U.S.C. § 1127. The definition of trademarks "includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127. The main difference between trade names and trademarks, other than the fact that the former refers generally to marks that identify a company or business and the latter refers generally to marks that identify a product, is that trade names cannot be registered and are not protected under 15 U.S.C. section 1114. *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir.1989). However, actions for infringement of either a trade name or trademark, whether or not it has been registered, may be maintained under section 43(a). *Accuride*, 871 F.2d at 1534. A plaintiff may maintain an action under

**2.** The mark may be generic in the manner it is used by defendant in its book titles, as defendant's books are indeed chronicles of historical events. However, the Court has already considered this and rejected plaintiff's claims based on the word "Chronicle" in the titles of defendant's books. *See* Court's August 9 Order.

The remaining claims focus on defendant's use of the words "Chronicle" and "Chronicle Publications" to describe itself as the publisher of its books rather than its publications.

section 43(a) if the allegedly infringed trade name or trademark is "used in commerce" on goods or services. *New West,* 595 F.2d at 1198–99; 15 U.S.C. § 1125(a).

■ There is no dispute regarding the fact that plaintiff has been using the marks "Chronicle" and "Chronicle Books" since at least 1968. Plaintiff advertises with these marks, places them on its publications and generally identifies its publishing business with these marks. Accordingly, it is clear that plaintiff has used these marks in commerce to sell its publications, and therefore has standing to sue for infringement of these marks under the Lanham Act.

As it is established that plaintiff possesses a protectable interest in its trade names or trademark, the pivotal inquiry in an action under section 43(a) is " 'whether the public is likely to be deceived or confused by the similarity of the marks.' " *Accuride,* 871 F.2d at 1533 (quoting *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir.1988) (quoting *New West Corp.,* 595 F.2d at 1201.)) The Ninth Circuit has outlined the following eight-part test for determining whether there is a "likelihood of confusion" under the Lanham Act: (1) strength of the plaintiff's mark; (2) proximity of the parties' goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of product lines.[3] *Accuride,* 871 F.2d at 1533–32 (citing *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979)).

Applying the test to the present case, the Court finds that plaintiff has submitted sufficient evidence to support a finding of "likelihood of confusion" regarding the origin of defendant's publications.

### (1) Strength of the Mark

Generally, arbitrary and fanciful marks are the strongest marks whereas descriptive and suggestive marks are the weakest marks. *Accuride,* 871 F.2d at 1536. The marks "Chronicle," "Chronicle Books" and "Chronicle Publishing" are not strong as they are suggestive marks. Therefore, this factor favors defendant.

### (2) Proximity of Goods

The goods at issue here are similar. Defendant sells "coffee table" type books that are large, hard bound books containing numerous photographs and plaintiff, as one of its products, sells the same type of book. This factor weighs against defendant.

### (3) Similarity of the Marks

Plaintiff places the mark "Chronicle" or "Chronicle Books" on the dust jacket of its publications and defendant places the mark "Chronicle" on the front cover of its book. In those instances where defendant uses the mark "Chronicle," the parties' marks are identical.[4] On the title page of its books, defendant places the mark "Chronicle Publications" which is also substantially similar to plaintiff's marks. There is nothing unusually distinctive about either parties' marks that would allow consumers to distinguish between the two marks. Therefore, this factor weighs against defendant.

### (4) Actual Confusion

Plaintiff has provided substantial evidence of actual confusion in the form of over 100 instances of customer confusion. These include book wholesalers requesting copies of defendant's publications from

---

**3.** This test has also been classified as a six-factor test, *see J.B. Williams Co. v. Le Conte Cosmetics, Inc.,* 523 F.2d 187, 191 (9th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976), and a five factor test. *See Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). However, the Ninth Circuit recently found no error in a district court's application of the eight part test outlined in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49

(9th Cir.1979). *See Accuride,* 871 F.2d at 1533 n. 1.

**4.** Defendant has changed the mark on the front of the second edition of "Chronicle of the 20th Century" and the recently published "Chronicle of the Year 1988" to "Chronicle Publications." However, the Court finds that there is substantial similarity between defendant's use of the mark "Chronicle Publications" and plaintiff's marks.

plaintiff, retailers and wholesalers attempting to return unused copies of defendant's books to plaintiff, bills for defendant's advertising being sent to plaintiff and congratulations on defendant's sales figures being conveyed to plaintiff. These requests and comments have come from 22 states and seven foreign countries and from established members of the publishing industry including Waldenbooks, The New York Times Book Review and Barnes & Nobles. This constitutes substantial evidence of actual confusion and weighs heavily in favor of plaintiff.[5]

### (5) Marketing Channels

The parties' books are marketed through many of the same channels. Plaintiff and defendant distribute their publications through many of the same wholesalers and national book retailers. Therefore, these books are often presented to the consuming public side by side in the same retail book stores. Moreover, these books are distributed through the same literary book club, the same trade shows and publications, and have been reviewed by the same trade magazines. Accordingly, this factor also weighs against defendant.

### (6) Likely Degree of Purchaser Care

The assumption that buyers within the publishing business would be knowledgeable of the identity of different book publishers and their publications is undermined by the large number of cases of actual confusion on the part of industry insiders documented by plaintiff. Moreover, consumers at the retail level would have far less expertise regarding book publishers, thereby creating the potential for even greater confusion. This factor also favors plaintiff.

### (7) Intent of Defendant

Defendant offers evidence that there was no intent to adopt similar trade names or trademarks and plaintiff offers counter

evidence on this issue. An issue of fact remains. The evidence proffered is not conclusive either way as to whether or not defendant intentionally adopted trade names and trademarks similar to plaintiff's. Accordingly, this factor supports neither party.

### (8) Likelihood of Expansion of Product Lines

Defendant is currently planning the introduction of "Chronicle of the Year 1988" in September 1989. Defendant intends to continue to market a new version of the "Chronicle of the Year" series each year along with a supplement to the "Chronicle of the Century" publication. Defendant will therefore be expanding its line. This expansion presumably will not go beyond the introduction of the style of books already being produced by defendant. Therefore, as far as the substance of defendant's books is concerned, defendant will not intrude any further than it already is into plaintiff's market. However, the introduction of defendant's new book and any increased sales in defendant's existing publications, from a quantity standpoint, will cause defendant to expand further into the relevant book market. This factor therefore favors plaintiff.

After evaluating the *Sleekcraft* factors, the Court holds that plaintiff has provided sufficient evidence to require a finding of "likelihood of confusion" regarding the origin of defendant's publications. Plaintiff has therefore proven its claim for unfair competition under section 43(a). Accordingly, defendant's motion for summary judgment is DENIED, and plaintiff's motion for summary judgment is hereby GRANTED as to plaintiff's Lanham Act claim.

### III.

■ In its second cause of action, plaintiff contends that defendant's use of the "Chronicle" and "Chronicle Publications"

---

**5.** Defendant does not dispute that this evidence is properly before the Court, but argues that it is of no moment in that no communicant explicitly states that he is confused. The Court is persuaded that confusion can be established by conduct as much as by protestation, and that is clearly the case here.

marks infringes upon its registered federal trademarks "San Francisco Chronicle," "Chronicle Sporting Green" and "San Francisco Sunday Chronicle." Plaintiff does not seek summary adjudication of this claim. Defendant moves for summary judgment of this cause of action contending that it has not infringed plaintiff's registered marks because (1) plaintiff's marks are generic, and (2) there is not a "likelihood of confusion" between plaintiff's registered marks and defendant's marks. Plaintiff asserts that genuine issues of material fact are unresolved regarding this claim. The Court finds that plaintiff's position is unpersuasive.

There is no dispute between the parties that plaintiff has properly registered federal trademarks in "San Francisco Chronicle," "Chronicle Sporting Green," and "San Francisco Sunday Chronicle." These marks are used by plaintiff in connection with publishing the San Francisco Chronicle newspaper. The Court must therefore determine whether, under the *Sleekcraft* factors outlined above, which are applicable to registered trademark infringement cases, *see Accuride*, 871 F.2d at 1533; *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d at 1194 (9th Cir.1979), there is a "likelihood of confusion" between plaintiff's registered marks and defendant's marks.[6]

A review of the eight *Sleekcraft* factors demonstrates that plaintiff's claim for infringement of its registered marks is without merit.

### (1) Strength of the Mark

Plaintiff's registered marks are not arbitrary. These marks are descriptive and therefore are weak marks. Accordingly, this factor favors defendant.

### (2) Proximity of Goods

This factor weighs in favor of defendant. Plaintiff's registered marks are used to identify newspapers, not books. There is

therefore a minimal likelihood of confusion between the products even though they may be distributed in the same retail locations.

### (3) Similarity of the Marks

Plaintiff's registered marks are much less similar to defendant's marks than are plaintiff's unregistered trade marks. There is sufficient distinctions between plaintiff's registered marks, "San Francisco Chronicle," "Chronicle Sporting Green," and "San Francisco Sunday Chronicle," and defendant's marks, "Chronicle" and "Chronicle Publications," to avoid consumer confusion. This factor therefore also favors defendant.

### (4) Actual Confusion

Plaintiff has not provided the Court with any evidence of actual confusion between defendant's marks and its registered newspaper marks. This factor favors defendant.

### (5) Marketing Channels

Plaintiff's newspapers, prior to reaching the final retail level, are not distributed through the same channels as defendant's books. Accordingly, this factor weighs against a finding of infringement.

### (6) Likely Degree of Purchaser Care

This factor does not favor either party.

### (7) Intent of Defendant

As to these registered trademarks, the evidence is not sufficient for the Court to find that defendant intentionally adopted marks similar to plaintiff's registered marks. This factor weighs in defendant's favor.

### (8) Likelihood of Expansion of Product Lines

There is no evidence that plaintiff intends to use its newspaper marks in its

---

6. It is unnecessary for the Court to address defendant's "generic" argument based on the Court's determination of the issue regarding plaintiff's first cause of action. Plaintiff's newspaper marks are no more generic terms for newspapers than are "Chronicle" and "Chronicle Books" generic terms for books.

book publishing business or that defendant intends to begin publishing newspapers. Therefore, this factor favors defendant.

Under these *Sleekcraft* factors, the Court finds there is an insufficient "likelihood of confusion" between plaintiff's registered marks and defendant's marks to support plaintiff's second cause of action. Plaintiff has failed, under *Celotex*, to satisfy its burden of producing evidence which creates a genuine issue regarding the facts for which it bears the burden of proof. Accordingly, defendant's motion for summary judgment of plaintiff's second cause of action is GRANTED.

### IV.

■ Plaintiff's third cause of action claims that defendant's use of the trade names "Chronicle" and "Chronicle Publications" infringes upon its trade names in "Chronicle," "Chronicle Publishing," and "Chronicle Books" under California Business and Professions Code sections 14400 and 14402. This claim is virtually identical to plaintiff's first claim under the Lanham Act.

California Business and Professions Code section 14400 provides that "any person who has first adopted and used a trade name, whether within or beyond the limits of the State, is its original owner." Thus, based on the undisputed facts in this action, plaintiff is the original owner of the trade names "Chronicle," "Chronicle Books," and "Chronicle Publishing" in the book publishing industry.

The "likelihood of confusion" between defendant's and plaintiff's trade names was established by plaintiff in its argument regarding its first cause of action under the Lanham Act claim. Therefore, as California statutory law provides that "[a]ny court of competent jurisdiction may restrain, by injunction, any use of trade names in violation of the rights defined" by California law, Cal.Bus. & Pro.Code § 14402, this Court may enjoin defendant's use of the trade names "Chronicle" and "Chronicle Publications" pursuant to this claim. Therefore, as with plaintiff's first cause of action, plaintiff's motion for sum-

mary judgment is GRANTED, and defendant's motion for summary judgment is DENIED as to plaintiff's third cause of action.

### V.

Plaintiff's fourth cause of action claims that defendant unfairly competed in violation of California Business and Professions Code sections 17200 and 17203 by using the marks "Chronicle" and "Chronicle Publications." This claim is also virtually identical to plaintiff's first cause of action. Accordingly, plaintiff's motion for summary judgment is GRANTED, and defendant's motion for summary judgment is DENIED as to this cause of action.

### VI.

■ Plaintiff's fifth and eighth causes of action contend that defendant, by using the marks "Chronicle" and "Chronicle Publications," has engaged in false advertising in violation of common law and California Business and Professions Code sections 17500 and 17535. Defendant moves for summary judgment of this claim. Plaintiff claims that genuine issues of material fact remain unresolved regarding this cause of action.

Section 17500 provides that:

It is unlawful for any person, firm, corporation or association, ... to dispose of real or personal property ..., to make or disseminate or cause to be made or disseminated before the public in this state, ... any statement, concerning such real or personal property or services, ..., which is untrue or misleading, and which is known, or which by the exercise care should be known, to be untrue or misleading. Any violation of the provisions of this section is a misdemeanor.

Cal.Bus. & Prof.Code § 17500.

Section 17535 creates a private cause of action for injunctive relief for any violations of section 17500. Cal.Bus. & Prof. Code § 17535.

In the present case, there is insufficient evidence to conclude either that defendant did or did not disseminate any statements

which it knew or should have known to be untrue or misleading. Defendant may or may not have adopted a trade name sufficiently similar to plaintiff's to create a "likelihood of confusion." The record before the Court does not conclusively establish that defendant was not aware of plaintiff's marks before adopting its trade names and trademarks. Therefore, the Court finds that genuine issue of material fact remain unresolved regarding the required elements of a prima facie case of statutory and common law false advertising. Accordingly, defendant's motion for summary judgment of plaintiff's fifth and eighth causes of action are DENIED.

## VII.

Plaintiff's sixth cause of action alleges that defendant infringed plaintiff's state registered trademarks, "San Francisco Chronicle" and "Sunday Chronicle," in violation of California Business and Professions Code section 14320. This claim is the state law version of plaintiff's second claim for violation of its federal trademarks. Defendant argues that because there is no "likelihood of confusion" between plaintiff's state registered trademarks and defendant's marks, summary adjudication of this cause of action is appropriate. Plaintiff contends that this claim is not ripe for summary judgment as genuine issues of material fact remain unresolved. Plaintiff's position is unpersuasive.

As is the case with plaintiff's second cause of action for federal registered trademark infringement, there is not a sufficient "likelihood of confusion" between defendant's marks and plaintiff's state registered newspaper trademarks to support this infringement cause of action. The Court finds that under the *Sleekcraft* analysis, plaintiff has failed to demonstrate that the necessary potential for confusion exists between the origin of plaintiff's newspapers and defendant's books. Therefore, defendant's motion for summary judgment of this claim is GRANTED.

## VIII.

Plaintiff's seventh cause of action for common law trademark and trade name infringement is a sub-claim of plaintiff's first cause of action for violation of the Lanham Act. *See New West Corp.*, 595 F.2d at 1201 ("common law and statutory trade-mark infringements are merely specific aspects of unfair competition.") Plaintiff contends that defendant's use of the marks "Chronicle" and "Chronicle Publications" infringes upon its common law marks "Chronicle," "Chronicle Books" and "Chronicle Publishing." This claim for infringement of common law trade names and trademarks may be asserted even if such marks are not registered.

The Court has already determined, in regard to plaintiff's first cause of action, that: (1) plaintiff maintains a common law right to these marks; (2) these marks are not generic; and (3) there is a "likelihood of confusion" caused by defendant's marks. Therefore no genuine issues of material fact remain unresolved regarding this claim. *See New West*, 595 F.2d at 1198–02. Accordingly, plaintiff's motion for summary judgment is GRANTED, and defendant's motion for summary judgment is DENIED as to this claim.

## IX.

Plaintiff's ninth cause of action alleging common law unfair competition is the common law version of plaintiff's Lanham Act claim. The Court has already determined that no genuine issues of material fact remain unresolved regarding plaintiff's unfair competition claims. Accordingly, plaintiff's motion for summary judgment is GRANTED, and defendant's motion for summary judgment is DENIED as to this claim.

## X.

Therefore, plaintiff's motion for partial summary judgment is hereby GRANTED as to plaintiff's first, third, fourth, seventh and ninth causes of action. Defendant's motion for summary judgment is hereby DENIED as to plaintiff's first, third, fourth, fifth, seventh, eighth and ninth causes of action, and GRANTED as to

**1382**

plaintiff's second and sixth causes of action.

Plaintiff is hereby ordered to submit to the Court a proposed form of judgment stating a proposed permanent injunction within one week of the date of this Order. Plaintiff is to provide a copy of this proposal to defendant at the same time. Defendant may file a written response to plaintiff's proposed judgment within two weeks of the date of this Order. Defendant should include in this response the current status of the production and distribution of "Chronicle of the Year 1988." A status conference is set in this action for August 30, 1989 at 9:00 a.m. in the chambers of this Court.

IT IS SO ORDERED.